Turley, J.
delivered the opinion of the court.
On the 3d day of January, 1845, William Park made and published his last will and testament in substance as follows:—
“It is my will and desire that my beloved wife, Jane Crozier Park, shall, from and after my decease, have and enjoy the exclusive and uncontrolled possession of my dwelling house, and the lot on which it stands, with all the appurtenances thereunto in any wise belonging to the same, during her natural life, and that all legal, State, county and corporation taxes that may, from time to time, during *196 ber said life, be assessed tbereon, be paid out of the monies belonging to my estate, and also that all monies that at any time, during her said life, may be necessary to keep said property in good and genteel repair, shall be furnished by my executors. It is also my desire, that my executors shall, in addition to such provisions as may be on hand at the time of my decease, furnish my said wife with a sum of money sufficient for the maintenance and support of herself and family in the same manner and style we have usually lived, for the space of twelve months from and after their qualification as executors.
“I further bequeath to my said wife the absolute title, property, and interest that I may have to and in all slaves of which I may be possessed, or the owner at the time of my decease, and all of my household and kitchen furniture and my books, and my carriage and horses, and cows, and such like property that I may own at the time of my death.
“ It is also my desire that my executors, for the space of twelve months, from and after their qualification as aforesaid, shall furnish my said wife such sums of money as she may from time to time desire to contribute for the support of the gospel, and such other religious and benevolent purposes, after which time it shall be the duty of my executors to pay over to my said wife for her support and maintenance, so long as her life shall continue, annually the sum of one thousand dollars, and the same shall be paid at such times in each year as she may direct; and in order to give them the means of doing so punctually and without failure, my executors are hereby directed to retain and set apart the sum of twenty thousand dollars out of any monies that may be due my estate, or vested in stocks at the time of my decease, which said sum of twenty thousand dollars shall be loaned and continued by my *197 executors at interest, and remain a permanent fund during the natural life of my said wife, the interest thereon to be collected annually, for the purpose last mentioned, and in the event of a deficiency of funds from this source for the purpose aforesaid, they are required to make up the one thousand dollars annually, out of any other funds or property belonging to my estate that may have come to their hands. I have an account against the estate of the late Leonidas Baker, formally the husband of my daughter Susan Wells Moses, for $1666 for monies loaned him during his life-time. I also, sometime since, gave to each of my three sons-in-law, James C. Moses, George W. Churchwell, who is the husband of my daughter, Sophia Moody, and James H. Armstrong, who is the husband of my daughter Ann Eliza, the sum of one thousand dollars: none of these three sums are to be taken any notice of, in any way, at any time whatever, by my executors. They are understood to cancel each other, and are merely noticed in this will that it may be known they were not forgotten, and what disposition had been made concerning them. I have advanced several other sums of, money to James 0. Moses, for all of which I have his obligations, payable with interest thereon, and it may be that during my lifetime I may make further advances to him. Should these advances and those hereafter to be made him with the interest thereon at the time when my executors shall take upon themselves the execution of my will, amount to a greater sum than $5000, my executors will collect from Mr. Moses, or his representatives such excess unless it shall suit him to execute his obligation to them for the same, payable in a reasonable time, with the interest to be collected annually.
“ I have also advanced several other sums of money to James H. Armstrong, for all of which I hold his obligations *198 payable with interest; and I have further made to him a title to a tract of land, that was valued at the time to one thousand dollars; the price is not mentioned in the deed, and for which I have not his obligation. Should Mr. Armstrong’s obligations, and the price of said land, and such other advances as I may hereafter make, with the interest accruing on the same, amount at the time when my said executors shall be qualified as such, to a greater sum than $5000, my executors will collect the surplus from Mr. Armstrong or his legal representatives, unless it shall suit him to execute to them his obligation for such surplus, payable with interest, annually. My executors are. hereby directed, in making this computation against Mr. Armstrong, not to charge him with interest on the price of the land until after the expiration of five years from the making of said deed, after which time he shall be charged with legal interest on the same. I have made but small advances to George W. Churchwell; my executors will ascertain what these advances, and such others as I may .hereafter make him, with all accruing interest thereon, will amount to, at the time when they shall undertake to carry out the intentions of my will: and whatever that sum shall lack of making the sum of $5000, this difference I wish my executors to retain and set apart from any unappropriated monies belonging to my estate, and hold the same as a permanent fund, for the sole, exclusive, and separate benefit of my daughter Sophia Moody Churchwell. My executors are required, when they loan this fund, to take obligations of the borrowers, payable to themselves annually, with legal interest thereon from date; which interest they shall collect yearly, and pay over the same to my daughter Sophia Moody Church-well, if she should desire it — otherwise to retain the interest *199 as a part of said fund; and should she at any time hereafter become a widow, my executors are directed, in such an event, to pay over to her all such fund, both principal and interest. I desire that my executors may have full power and authority to sell or lease, or dispose of in any way they may think best for my estate, all my interest in any or all lands, town-lots, and real estate of every description of which I may die seized or possessed, or in which I am entitled to an interest: except, however, my dwelling house and lot which I wish left to the exclusive possession and control of my wife as herein before directed, until after her decease, and then I desire (if in the opinion of my executors it would be impracticable to partition and divide said dwelling and lot among my heirs, so as that the same could be enjoyed by them profitably) that they may sell this property upon such terms and in such manner as to them shall seem best, and apply the proceeds in the same way, that the balance of the monies belonging to my estate are herein after to be appropriated.
“My executors are requested fully and punctually to comply with all the foregoing bequests and provisions in my will, and especially to endeavor to carry out my intentions in the manner herein directed, relative to each and all the foregoing permanent fúnds, for I desire that they shall be kept up and the principal of them in no way diminished so long as the objects of them shall exist. And now I will state to my executors, my will and desire concerning all the remaining portion of my estate. My desire is, that as soon as my executors shall, by due diligence in the collection and realizing monies due and belonging to my estate, or which may be the proceeds of my real estate aforesaid, or which may result from all or either of the foregoing permanent funds, after the decease of either *200 my said wife or daughter Sophia Moody, or both of them, that they shall apply it in the manner following, to wit,—
“ At the end of every six months, should they have so much as $1000, or more on hand (after keeping and supplying the permanent fund before mentioned, they shall make a division of the money on hand into three equal parts, one part, or third of which shall be loaned at interest by my executors, the interest to be collected annually and loaned out again, which fund and all accruing interest thereon will be held and managed by my executors, for the benefit of my grand-children William Park Baker, Betsy Jane Baker, and Leonidas Boyle Baker, to be paid to them, in equal portions, as they severally arrive at the age of twenty-one years, or as soon thereafter as the nature of the funds appropriated to their use will admit of it. My will and desire is, that my executors shall pay over to my three grand-children above named, such amount of said funds as thejr shall have in their hands at the time above mentioned, and the remainder as speedily as it may thereafter be in their power. And one other third to be loaned out at interest, and managed by my executors in the same manner, and which shall be held and controlled by them as a permanent fund for the sole, exclusive, and separate benefit and advantage of my daughter Sophia Moody Churchwell and her children, should she have issue,
“ The interest in this fund may be paid to her annually if she requires it, and if at any time my said daughter should become a widow, in that event the whole of this fund, with the interest thereon, shall be paid to her, but in the event of her demise before her husband, leaving no issue, it shall then be the duty of my executor to pay half of said fund and interest, and all others held by them *201 for her separate benefit to the natural children of my daughter Susan Wells Moses, and the other half to the natural children of my daughter Ann Eliza Armstrong, in equal portions to each. The remaining one-third to be loaned out and managed by my executors in the same manner, and to be held and controlled by them as a permanent fund, for the sole, separate, and exclusive benefit and behoof of my daughter, Ann Eliza Armstrong and her children. The interest on this fund, if she requires it, shall, be paid annually to my said daughter, and should she at any time become a widow my executors shall then pay over to her said fund and interest. But should her husband survive her, the same shall then be paid to her children in equal portions.”
The testator having published this his last will and testament, departed this life afterwards, viz — in the month of September, 1846, and his will was duly admitted to probate at the September term,' 1846, of the County Court of Knox. At the October term, 1846, of said County Court of Knox, Jane C. Park, widow and relict of the said testator William Park, appeared in open court and signified her dissent to the said will and testament of the said William Park in due form. Afterwards, at the December term, 1846, of the County Court of Knox, it appearing to the court that the executors named by the testator in said will, had refused to accept of the trust and declined acting as such; letters of administration with the will annexed, were duly granted to Drury P. Armstrong, who now files this bill for a construction of the will, preparatory to its execution. There is, iii our opinion, but little difficulty in arriving at the true construction of this will: all the obscurity which has been supposed to exist in it, results, we apprehend, from a very strong and natural *202 desire so to construe it, as not to disinherit, to a great extent, Susan Wells Moses, one of the daughters of the testator, and to make a just and equitable division of the estate, as nearly as possible, between all the children of the testator. In the construction of this will, we must a ways bear in mind two leading principles of Jaw upon such subjects. First, That the intention of the testator when ascertained, if not contrary to legal policy, is always to prevail. Second, That it is never to be presumed that he intended to die intestate, as to any portion of his propertj-. If Mrs. Park, the widow of the testator, had not dissented from the will, it is probable that it never would have been supposed that a construction of if, by this court, was necessary, but it. is supposed that this dissent has involved the different provisions of the will, especially that portion of it which constitutes the' special permanent funds, and which prescribes the mode of distributing the body of the estate, in confusion; and the administrator, with the will annexed, is unwilling to take the responsibility of carrying into execution these specific provisions of it, without the advice of this court. In giving the construction sought for, it becomes necessary to enquire, first, What effect this dissent of the widow has produced in relation to her own rights in the estate of her deceased husband? Second, What effect it has produced upon the corpus of the estate, both real and personal, of which her husband died seized and possessed, and of what this corpus consists? Third, What are the interests of the different devisees under the will? Fourth, What discretionary powers, in relation to the real estate, were vested in the executors, and how they are to be executed, the executors having declined the trust ?
1. We think the dissent of the widow, to the provisions *203 of the will, opens the whole estate, so far as she is concerned, and lets her into the enjoyment of all her rights thereto, in as ample a manner as if her husband had died wholly intestate: that is to say, she shall, by virtue of this dissent be allowed dower in all the real estate of her husband of which she is by law dowable; and that, she shall take as distributee one fourth of the whole of his personal estate of every kind and description as well choses in action, as goods and chatties in possession.
2. We think that, inasmuch as she has dissented from the will, all the property devised to her, as well that which is specific, as her annuity of one thousand dollars a year during her life, falls back to the estate; and that the fund of twenty thousand dollars, directed by the will jo be set apart by the testator’s executors, out of whi/ifi pay the annuity, remains an integral part of the estáte, ^ not to be charged with the annuity; that the objepfj^y SC'HOOFi which it was solely created having failed by the dissent of the widow as completely as it could have failed RAB.Y* death without such dissent, this fund cannot and ought%©fc=&v ,*f*~*** to be separated from the estate, but must be left to pass under the will as other portions of the estate, after the widow’s right to dower, and her distributive share are satisfied. The corpus of this estate consists of all the lands, tenements, and hereditaments of which the testator died seized and possessed, or to which he had any interest, either legal or equitable, all personal property of every kind and description, whether in possession or in action, all debts and demands, of whatever kind and description, whether due by account, bill, bond, note, or other security, of all sums advanced in his life-time to his three sons-in-law, James C. Moses, George W. Church well, and James H. Armstrong, over and above the sum of one thousand *204 dollars eacb : tbis surplus, if not exceeding $5000, in each instance, only to be taken into consideration in estimating the amount of personalty out of which the dissenting widow is entitled to distribution.
3. We think that James C. Moses takes under this will all sums of money given by the testator to him in his lifetime, which does not exceed five thousand dollars; for any surplus above that amount he must account in manner as prescribed by the will. That James II. Armstrong takes in a like manner; the land given to him being estimated at .$1000. And for any sums over and above five thousand dollars, he must account in manner as prescribed by the will; that George W. Churchwell takes all sums of money •advanced to him by the testator in his life-time; and that whatever of difference there is between this amount with interest thereon, when letters were granted to Drury P. Armstrong, and five thousand dollars, is a bequest to Sophia Moody Churchwell, wife of George W. Churchwell, for her sole, exclusive, and separate benefit, that this amount is to constitute a fund to be loaned for this purpose, the interest of which may be paid to said Sophia Moody Churchwell if she -desire it, if not, it is to accumulate. That if she survive her husband, this fund, with all accruing interest is hers, — absolutely in her own right, and as such is to be paid over to her. But if she die, living her husband, and without issue, this fund is to be equally divided, and the one half given to the children of Susan Wells Moses, and the other half given to the children of Ann Eliza Armstrong, in equal portions to each. We also think that Sophia Moody Churchwell takes as devisee under the will, one third part of the whole of the estate not set apart for the dissenting widow as well real as personal (except the house and lot which is specifically *205 disposed of) that this third part also constitutes a fund which is to be loaned out for the sole, exclusive, and separate benefit and advantage of said Sophia Moody Churchwell, the interest thereon to be paid annually, if she desire it. If she survive her husband, this fund constituting one-third part of the testator’s estate is hers absolutely in her own right, but if she die, living her husband, leaving no issue, then it is to be divided also in moieties between the children of Susan Wells Moses and Ann Eliza Armstrong, in equal portions to each. We think that one other third part of the testable estate is given by the will to Ann Eliza Armstrong to constitute a fund to be loaned out for her sole, separate, and exclusive benefit and behoof, the interest of which may be paid to her annually if she require it. If she survive her husband, the whole fund is to be hers absolutely, but if she die, living her husband, the same shall (in the words of the will) be paid to her children in equal portions.
We think the other third of the testable estate is given by the will to the testator’s, three grand-children, William Park Baker, Betsy Jane Baker, and Leonidas Boyle Baker, to be paid to them in equal portions as they shall severally arrive at the age of twenty-one years.
We think that the dwelling house and lot of the testator, in the town of Knoxville, where he resided at the time of his death, is given by the will to his three daughters, Susan Wells Moses, Ann Eliza Armstrong, and Sophia Moody Churchwell as tenants in common, subject, to be sure, to a discretion in his executors, who are empowered to sell the same if in their opinion it would be impracticable to partition and divide said dwelling and lot among his heirs (who are his said three daughters) so that the same can be enjoyed profitably by them, in which event he *206 directs the funds arising from said sale, to take the direction of the balance of his estate as provided for in the manner herein before stated;' but we think that that discretion is a' personal one, devolved alone upon his executors, and that inasmuch as they have declined the trust, there is no one to exercise the discretion, and that of consequence the heirs take the house and lot jointly in fee simple, and that they may divide it or sell it as best suits their interest.
4. By the provisions of the will a discretionary power is given to the executors to sell, lease, or dispose of in any way they may think best for the estate, all the testator’s interest in any and all lands, town lots, or real estate of any description of which he might die seized and possessed.
This trust is personal, confined to the executors appointed by the will, and cannot be exercised by the administrator cum testamento annexo, but by the advice and consent of the Chancellor. It will be seen from this view of the rights of the conflicting parties under this will, that we hold that the testator did not die intestate, as to the twenty thousand dollars directed by the will to be set apart as a fund, charged with the payment of the annuity of one thousand dollars a year to the widow.
Independent of the principle, that the presumption is against an intestacy as to any portion of the estate, we are well satisfied that the testator not only did not intend to leave so large a portion of his estate undisposed of, but that he has devised it in express terms, after the expiration of the trust for which it was created.
By the words of the will, this sum of money is to remain a permanent fund during the natural life of the wife only; then upon her death, of necessity, the fund having performed what was required- of it, fell back into the general mass *207 of the estate; and it is expressly disposed of by what has in argument been called the residuary clause of the will. For, in what may properly be called preliminary instructions, given previous to this clause, the testator says: “ My executors are requested fully and punctually to comply with all the foregoing bequests and provisions in my will, and especially to endeavor to carry out my intentions in the manner herein directed, relative to each and all the foregoing permanent funds, for I desire that they shall be kept up, and the principal of them in no way be diminished so long as the objects of them shall exist.” Now, there were two permanent funds created in a previous part of the will, first, the $20,000 fund to support the annuity of one thousand dollars to testator's wife, and, second, the amount of the difference between the sums advanced by the testator in his life-time to his son-in-law, George W. Churchwell, and five thousand dollars, which was constituted a permanent fund for his daughter Sophia Moody Churchwell during her coverture, with limitation over if she died during coverture without issue. Well, in the clause of the will, in connection with these instructions relative to these funds, the testator says: My desire is, that as my executors shall, by due diligence succeed in the collection and realizing monies due, and belonging to my estate, or which may be the proceeds of my real estate, or which may result from all or either of the foregoing permanent funds after the decease of my wife and daughter Sophia Moody, or both of them, that they shall apply it in the manner following,” &c.
This is unquestionably a clear bequest of both these funds after the event had happened, which released them from the trust imposed upon them, to wit, the death of the wife or daughter. The dissent of the wife to the *208 will, discharged the fund of twenty thousand dollars, as completely as her death would have done. It will also be seen that we hold that the limitation over of the legacies given to Sophia Moody Churchwell, upon the event of her death without issue, living her husband, is not. void for remoteness. This is obviously so, because this event, if it happen at all, must happen in the life-time of George W, Churchwell, for if she survive him, the whole legacy becomes hers absolutely. The decree of the Chancellor will be reversed and modified in pursuance of this construction of the will.